Mr. Pack, whenever you're ready Morning, Your Honors, and may it please the Court, Albert Pack for the Petitioner.  Mr. Stephen McPherson, this case should be remanded to the Board of Immigration Appeals. The Board erroneously refused to review the immigration judge's findings that Mr. McPherson's simple battery misdemeanor was both a crime involving moral turpitude and a crime of domestic violence. Before you go into that argument, Mr. Pack, can I ask you a question? With regards to your second argument, the one you asserted in the brief, the government has filed supplemental authority indicating that the petition has now been denied on the merits. And they assert that that renders your second argument about the denial of a continuance to wait for the result of the petition adjudication as moot. What position do you have on that? Your Honor, I just have one factual point to make on that point. And on the rest of the second issue of motion to continue, I'm happy to rest on my briefs. The one factual point I'd like to make is that while the first I-130 application that was at issue when the motion to continue was filed, that was denied on technical grounds. Since then, it is my understanding that Mr. McPherson's wife has submitted a new I-130 application that is currently pending. I'm happy to rest on my briefs with that out of the way. To return to the first issue— If you could, though, and if that's what she's done, I don't think there's going to be any dispute from the government. I'd like you to file a 28-J letter within 10 days of today just indicating that she has done that and filing, attaching a copy of that petition to the letter. I'm happy to try to do that, Your Honor. I've been trying to get the copy of the third I-130 application. It's hard to coordinate with my client, but I will do my best to do that within 10 days, Your Honor. If you're not able to do so, then just let us know, but I'd like you to try to the best of your ability to do that. Yes, Your Honor. Can you try to give us the date? I assume it was well after the hearing. Correct, Your Honor. It was recent, is my understanding, within the past few months. Right. The new I-130 was filed, we know, at least in 2018. That is my understanding, Your Honor. Okay. So that would not be before us in any way to affect this issue then? It is a continuing I-130 application, Your Honor, but I'd be happy to give you the specific date. No, I need some help. Whether we should just say the continuance issue is moved or because there's a new one that was just filed a few months ago, somehow the result is different. It seems to me you have to concede as to this case at this time, the motion for continuance issue based on the pending I-130 at that time is moved. But if you have an argument otherwise, we're glad to hear it. I'm not prepared to concede that today, Your Honor, but in a 28-J letter, when I do, if I can't file the third I-130 application, I'd be happy to provide authorities. And you are also, of course, permitted to respond to the government's mootness argument in its 28-J letter. So to the extent you have a position on that issue, you can certainly put it forth in that letter along with any attachments you're able to locate. Yes, Your Honor. Yes, and I'm not trying to say what your position should be and not be – I'm just asking what it is because you brought up the third petition. I understand, Your Honor, and if I could return with that to the first issue, which I think is the real issue here. The unreviewed findings by the immigration judge that the simple battery misdemeanor constituted both a crime involving moral turpitude and a crime of domestic violence, these unreviewed findings render Mr. McPherson permanently inadmissible to the United States. So the board on remand, at a minimum, has to apply its expertise in immigration law to endeavor to explain why these unreviewed findings will not have a material practical – I tried to draft a last paragraph of the opinion because I think your brief makes some very good arguments in that regard, and we all know it has collateral consequences. So would this be satisfactory to you with regard to that particular issue? So if you were to say something – and I'm just talking hypothetically. We haven't conferred. Yes, Your Honor. But I tried to see how this would work where they don't rule on this other ground, and they have denied the petition on some other ground. Yes, Your Honor. That the remand would be to the BIA must either, one, reach the merits of that issue or vacate the IJ's order as to the two grounds of removability, leaving in place only the order of removal on the conceded ground that he failed to comply with the conditions of his visa. Would that be okay if we just vacate that aspect or leave it to the BIA? I'm troubled by going back and making the BIA rule on something that's not necessary to resolve this case. So why couldn't you say reach the merits of it, or if you don't want to reach the merits of it, vacate that portion of the IJ's order because it's still – in fact, your client's already been removed, right? That's correct, Your Honor. Been removed since when? I believe since September. Okay. Your Honor, and I think that – Would that work? I think that would be a fine result, Your Honor. Okay. And it is consistent, although slightly different, from what this court did in Ocean Rendez and in NAMCG. We've done three different things, and the wording in all three of them is slightly different. I've compared the last paragraph and all of the cases that I could find, not only the ones you cite, but I look at our non-published generally, trying to see what we did here. Some of them kind of say, oh, BIA, go figure out what to do. That's not very helpful because we don't really say vacate it or decide the merits. We just say, oh, if you think it has some collateral effect, do something. That doesn't really help. Well, Your Honor, if I could explain why I think the court did that, at least in Ocean Rendez and NAMCG, and as I say, I just want to make it clear, I think that would be one way to go, the way that Your Honor suggested. But the court in Ocean Rendez, and, of course, Judges Jordan and Hall were on that panel, even though it was unpublished per curiam. The court cited the Supreme Court's case in Ventura for its explanation of why it was remanding to the Board of Immigration Appeals for a further explanation as to why these additional unreviewed grounds of removability will not have a practical, legal, or material impact. The court cited Ventura for that proposition, and that case is about allowing judicial review of an administrative decision. Because currently, as it stands, there is no sufficient explanation by the Board of Immigration Appeals as to why it did what it did, even though, as you just noted, Your Honor, there are these collateral consequences. So the general practice here— I don't know whether they are or not, but we're not going to get into it. It's certainly the potential of collateral consequences. I understand. I didn't mean to overstate what Your Honor had said, but— I'm looking at the language there. See, this is the problem in Ocean Rendez. The last sentence says, Remand the case to the BIA can address that issue. If indeed there is a sound reason to reach the issue on remand. So that's kind of like—I don't know what we're telling them to do. Well, I think it's because, Your Honor, in Ocean Rendez there was the same prerequisite question that I think may still be present here, which is the Board did not explain why it was not addressing these two additional grounds of removability. So if there is a good explanation as to that, and I don't think that there is— You mean something like waiver or something? That could be one of the things that the Board points to in applying its expertise in immigration law. So the first question is the Board has to explain itself so that this court can review under the appropriate standard. Ventura says the leeway provided by law, I think it's probably an arbitrary and capricious standard. You can't even do that judicial review right now because of this lack of explanation. And I think what Ocean Rendez was getting to there, Your Honor, was to say, look, if you can't provide that explanation, we'll go ahead and review it. If you can't provide that explanation, and you've got these unreviewed findings, go ahead and review them. So I think that was the last sentence, Your Honor, of Ocean Rendez and why I was instructing— well, with remand, with instructions that in the event that the Board is unable to provide that explanation, it has to go ahead and review the two unreviewed findings. Is it unfair to assume that the Board simply knew that this person would be removable for the one reason, and so they didn't see the need to review the other two reasons? That's not unfair, Your Honor, because it was very clear that Mr. McPherson had conceded one ground of removability. Do we have a plain statement requirement that the BIA has to explain why they don't review a particular question if it doesn't matter to the impact of the case? What the Board did not explain has nothing to do with the removability. Yes, if there was a plain statement requirement that they do that. No, I don't think it's a plain statement requirement, Your Honor. There's no requirement. I think it's a requirement under Ventura that the administrative proceedings have sufficient explanations that enable judicial review, and without that explanation, the general course is to remand so that there can be that explanation. Now that he's removed, if the Board did go back and review those other removability decisions, would we even have jurisdiction to take appeal of that review once this person is already out of the country in any event? Yes, Your Honor, this court continues to have jurisdiction. These are the collateral consequences having continuing injury to the appellant that does justify jurisdiction, and this was squarely at issue in the Fifth Circuit case, I believe, Alwan v. United States, and also the Third Circuit case, Mayorga v. U.S. Attorney General. Go ahead. There, the posture was slightly different. It was squarely on the question of justiciability and the mootness question of the jurisdiction, but it was the same principle, which is that it is these collateral consequences to reentry that makes it, two things, the case justiciable, and the Board had to explain why these things were not sufficient to review these additional grounds of removability. Whose responsibility is it to identify which collateral consequences, if any, exist from these remaining IJ findings? Well, just so I understand. I find it conceivable that there could be collateral consequences, but I don't know that anyone has told us what those would be. Well, Your Honor, we've argued that in the briefs, Your Honor. If you look at Section 1182, if you commit a crime involving moral turpitude, you are permanently inadmissible to the United States. There are, as I think Judge Hall suggested, some workarounds, but it is up to the Board of Immigration Appeals to explain why the prima facie permanent inadmissibility is not a significant collateral consequence. Is the IJ's conclusion on that matter binding in the future? Well, Your Honor, the IJ's finding – are you talking about the IJ's finding of crime involving moral turpitude? Right. My understanding is that it is binding as to the inadmissibility issue as well, but if it is not, that is, again, precisely the sort of expertise in immigration law that the Board has to apply to explain why it is not true that there are no collateral consequences from this, because on its face from Section 1182, there is a permanent bar to reentry, Your Honor. Conceivably, the BIA, and I think you probably would have been – well, your client probably would have been as satisfied as possible with this if the BIA had said, because we're not addressing the crime of moral turpitude issue, we're not going to treat it as having binding effect in any future proceedings involving Mr. McPherson, and that issue can be litigated at a future point in time if necessary, right? Because that would have left the issue completely open, and should Mr. McPherson ever try to reenter the United States or apply for admission, that issue could be then litigated without there being preclusive effect to the IJ's order. That last part, Your Honor, I think is key, and I agree, because the prejudice here is that preclusive effect. So I don't know what the procedure would be. I don't know if the Board would have to vacate, as Judge Hall suggested, the IJ's finding as to those unreviewed grounds. I'm not sure it would be sufficient for the Board just to say that it's not binding in the future, and that would show up on Mr. McPherson's records, but I think that would be enough. And, Your Honor, to be clear on this case, I think there's an additional factor here, which is that reentry is not just some sort of a hypothetical possibility for Mr. McPherson. His wife, his 9-year-old daughter, and his 12-year-old stepdaughter are all U.S. citizens residing in the United States. Reentry is the only means by which he can live with his family here. So, again, that is an additional factor that this court could consider in a narrow holding, that, you know, when there are unreviewed grounds that the appellant has squarely challenged that are more severe in the sense that they appear prima facie to have severe collateral consequences, and it is true here that these reentry rights are important for the appellant, for the petitioner, then only in those circumstances is a remand appropriate. Okay, Mr. Pak, thank you very much. Thank you. Hold on one second, Ms. Murcia. I'm sorry, you said proceed, or? I said just wait because some people are walking out of the courtroom. Whenever you're ready. Good morning, Your Honors. May it please the court, Lisa S. Murcia of the Office of Immigration Litigation, for the respondent. First of all, I would like to address the mootness argument, just to address some of the questions that were brought up by the court. I am not currently aware that a third Form I-130 has been filed by Mr. McPherson's wife in this case. I do have information that there were other Form I-130s filed by his sister as recently as June 2018. I did not mention that in my 28-J because it is the government's position that as those Form I-130s were filed long after this proceeding has occurred, that it would be a completely different issue that doesn't necessarily affect the continuance in this particular case. Ms. Murcia, if you could, in the spirit of cooperation, if you could find out whether or not a subsequent petition was filed and let Mr. Pack know, and if you have a copy of it, provide it. That'll give us the date of filing and everything else, and it will certainly help us in figuring out the mootness issue. I will if I will be able to. There are some different privacy concerns because the petition is filed by the petitioner's spouse, not necessarily petitioner, so I might not be able to achieve getting a copy. I might just have the information that it was filed or not. Right. We don't want you to try to do the impossible, but if you're able to shed any light on that issue, we would certainly appreciate it. Absolutely, Your Honor. Thank you. Is it correct that the denial that you notified us of in your recent letter was on July 3, 2018? Yes. Did you become aware of that denial after the briefing or before? I became aware of it. There is a footnote on page 21 of the respondent's brief that mentions the denial. However, the time for appeal was not finished by that point by the time of the filing of the respondent's brief, so that is the reason that we did not file mootness at that point. And then I recently checked into it again, and it took me a little while to double-check with the agencies regarding the denial of the Form I-130. You mentioned possible mootness in your brief in that footnote, suggesting that the petition had been denied. I mentioned the denial of the Form I-130, but my apologies. I did not mention mootness at the time because, to be honest, it seemed premature to make that argument at the time. So my apologies. Do you know now that there was no appeal from that denial? To my knowledge, I did check with the Board of Immigration Appeals, and they said that there was no appeal filed. Thank you. Regarding the second issue before the court, and as counsel said, perhaps the most pressing issue before the court, the respondent's position is that the board properly determined it was unnecessary to reach any other basis for removability in denying Mr. McPherson's motion to terminate, and where the record reflected that he had already conceded a ground of removability. Let me see if I can shift the thinking a little bit and maybe help us address this issue. Think of a district court and a court of appeals. District court rules on a case on one issue, provides three alternative grounds. Court of appeals gets the case, says we only need to address one of the grounds. The district court got one of them right. We don't need to address the other two, and we're affirming on the one ground. End of story. In our practice on the federal court side, our decision is not binding precedent on the two issues that we chose not to address. People can treat the district court's ruling on those issues as persuasive in the future, but our decision is not binding on them. What makes the BIA-IJ scenario different, the same, or somewhere in between from a federal court of appeals and a district court here? Well, Your Honor, this actually has sort of a multi-part answer in some ways, because I did want to correct something that Mr. Pack said earlier. Judge Grant was asking if the board or immigration judge's decision would be binding in the future, and it depends on the context would be the best answer for that. And that sort of encapsulates the problem in this case, and the reliance of the petitioner on that language in Osho Rende of any material legal impact in the future relief. Essentially what happens is that the petitioner can still get lawful permanent resident status, but he would have to do it through a different procedure. He would have to, in this particular case, if his I-130 was accepted sometime in the future, he would have to go through a consular process to be able to get that visa. And while the board and immigration judge's decision in that circumstance might be persuasive, it wouldn't actually be binding, because the government's position in this is that it's when the adjustment of status application is made that the determination of inadmissibility would be made. And in this particular case, we never got to that point. We never got to the point where he was actually applying for adjustment of status. Here, the board properly followed its procedures. It looked at what was directly at issue in the case, and what was directly at issue in the case was he had filed a motion to terminate proceedings on the basis of these two grounds of removability that weren't essential to determine his removability. And the second issue, which is what the petitioner's case is primarily based on, the possibility of somehow, at some point in the remote future, he might be eligible for future relief wasn't at issue. What an immigration law, whether it's a statute, a regulation, or a BIA decision that's precedential, says that that IJ ruling on crime of moral turpitude is not preclusive in the future, even if admissibility is determined at the point of adjustment in the future. What provides us an answer to that one way or another? Well, it may be illustrative to look at this case in the fact that he had two grounds of additional removability that were at issue. There was the CIMT, of course, and there was the domestic violence. And both of these were considered as issues of removability under 1227. They weren't considered as an issue of admissibility under 1182. But decisions about crimes of moral turpitude have impact across varying different immigration statutes, right? Yes. They do various things to you in different scenarios. That's true, but I think if you look at the two statutes, and I pointed this out, the petitioner did say that it might not be applicable in Mr. McPherson's case, but looking at this wider, in our brief, we brought up the fact that for removability, there's no petty offense exception. For an admissibility, there's no petty offense. There is a petty offense exception. So the grounds of removability and admissibility can be treated differently in different contexts. My question is what tells us that in immigration law? What tells, Your Honor, what? If I wanted to find the answer to the question of whether or not an unreviewed IJ finding on a crime of moral turpitude has any preclusive effect in future admissibility or reentry proceedings or visa proceedings, where would I find that answer? We would refer to the statutes, actually. Most of the statutes say, including the adjustment of status application, essentially, I'm sorry, statute, essentially stay like inadmissibility or at the time of the application for adjustment of status. Right, but that doesn't answer the question of preclusive effect. Sure, you have to make a decision at the time he moves for readmission. That makes perfect sense. He applies and the government decides yes or no. But in deciding yes or no, does the government look at the IJ ruling on a crime of moral turpitude and give that any effect? Or do they act as if that ruling had never been made and start from scratch? Well, Your Honor, a lot could happen between point A and point B. No, I'm assuming that there's nothing that happened between point A and point B. He waits whatever number of years it is, and he applies for readjustment with an I-30 petition. Again, it could be persuasive, but it's done at the time of the application for admission. So I'm not saying that they wouldn't look at the immigration judge's decision or the board's decision, and it could be persuasive to them, but he could submit additional evidence. He could do other things that would show that he could possibly not be inadmissible at the time. So it's your position that that would not be a binding determination, that IJ's previous determination would not be binding on these future admissibility proceedings? In the context of a circumstance like consular processing, no. Is there a circumstance in which that decision would be binding? For example, if it came in front of the board again in motion to reopen, where it's within the same proceedings before the immigration judge or the board? I don't want to put you in a bind, but I'm going to ask you this question. You're comfortable with us writing an opinion that says it is the position of the United States government that in a future proceeding involving Mr. McPherson, the IJ's unreviewed finding of a crime of moral turpitude has no preclusive effect? Again, I would not put that statement in such a bald terms without context. I'm sorry, but I wouldn't concede that that statement in and of itself is... Okay, you finish this sentence for me if you're able to. Should Mr. McPherson apply for readmission in the future, the government will do the following with respect to the IJ's unreviewed finding about a crime of moral turpitude, colon. Finish the sentence. They would determine his inadmissibility in terms of their crime of moral turpitude at the time. De novo. In respect. De novo. Yes. You're comfortable with that in a written, published opinion? In the context of if he was applying through consular reviewability, if he was applying in front of the board of immigration appeals, they would likely have to take into context the immigration judge's position. Well, he's out of the country now. He's been removed. What is his only legal way of coming back into the country? He would have to, one, have an I-130 approved. Right, let's assume that that happens. And he would have to consular process. Okay, in that consular process, does the government exercise de novo review over whether or not he committed a crime of moral turpitude and not give preclusive effect to the IJ's unreviewed finding? My understanding is yes, that they would consider it simply persuasive, but they would be deciding inadmissibility at the time based on the facts that they had in front of them. They would look at it? Yes. And they would consider it? They would. And frankly, it would be highly persuasive in all candor? Most likely, yes. And the government would still argue it, I can assure you? It would, but... And it's not going to be you. It's going to be somebody else. So let me go to my question again. I asked Mr. Pat, what would be wrong? I'm not saying I think this is what we should do. I'm just trying to understand the upsides and downsides to what we write because we've had this a couple of times non-published. Is there anything wrong with saying the one ground was all that was needed and the BIA can go back and either rule on the merits or decide it has no preclusive effect and say it or just vacate the IJ? Why wouldn't we just let the BIA decide what to do about it? I don't want to tell them they have to reach the merits. I don't want to tell them it has no preclusive effect because there is such a multilayered analysis. Sometimes you go through consular application. There are other ways to do it. It's so complicated. Is there anything wrong with that saying as to the two unreviewed findings, you, the BIA, either review them on the merits or tell us vacate the IJ's order. Let's try those two options. Is there anything wrong with that? This case is sort of illustrative of that problem in a number of ways. The problem that the petitioner is having is that they're taking what in some ways is dicta in Oshunrinde and Namsikji. I absolutely agree. We're not bound by anything. It's dicta. It's a clean slate. Let's get over that. There's no case law. I'm writing on a clean slate. I'm asking in this case, is there anything that precludes us in the government's view or says it's a bad idea if we were to say as to the two unreviewed findings, the BIA on remand shall either review them on the merits or vacate the IJ's order. Yes, Your Honor. Why is that bad? I strongly believe there is. Strongly believe what? That there is an issue in remanding to the board and asking them to make a decision on issues that were not essential for their decision in this case. Okay, so why is it wrong then to tell the BIA, you can do the merits if you want to, but you don't have to, but if you don't want to do it, that's fine. Just vacate the IJ ruling. What's wrong with that part? Well, Your Honor, it's the reasoning behind the remand. I mean, this is, it's interesting that the petitioner is bringing up case and controversy here because in their brief, in their reply brief, they specifically said, we're not talking about judiciability. We're talking about procedure. And I think that if the court looks simply procedurally at this case, the board made a proper decision. They relied on Baghamazbad. They procedurally said this is not necessary to remove ability. You have no other relief. And their decision is procedurally well-reasoned. We would affirm that part. Okay. We would deny the petition as to that, but it's kind of like a clean-up remand. Okay. We would deny the petition. We wouldn't open up the whole thing. We would deny the petition on the grounds that he is removable and, is it a he or she? Is it he? It's a he. All right. He is removable on the visa ruling, just like the BA. We'd affirm them on that, deny the petition, but have a limited now remand to either tell us there is no collateral consequence on the other two grounds or vacate it. What's wrong with that? I'm sorry. It's okay. I'm over time, but I would appreciate being able to answer. We'll write ahead and take your time in answering Judge Hall's question. I think that gets at the heart of the issue and why we're talking so much speculatively about what can happen afterwards and why this case in some ways should not be remanded, in a manner that suggests that future relief, issues that were not at issue in this case, that were not in controversy in this case, can be a basis for remand to the board, things that the board didn't have to decide, and that it would be honestly complete speculation on how it's going to affect Mr. McPherson in the future. What level of discretion does the secretary have when he applies for readmission through a granted I-130 petition? Is it complete, absolute discretion? In terms of a waiver that he can... However he tries to get in legally. He has an I-130 granted. He moves to be admitted pursuant to that. What discretion does the secretary have to grant him or deny him that relief? Is it absolute and unreviewable discretion? Your Honor, that actually comes up with another particular issue in this case. In terms of this idea that if the board resolves this criminal issue, the CIMT, that Mr. McPherson will magically be able to come back to the country. I mean, there are several inadmissibility grounds in this case that weren't touched upon by the board because they simply weren't at issue at that time. I know. We're talking about the other ground though now. And my question remains, what level of discretion does the secretary have in ruling on his request to be readmitted pursuant to a granted I-130 petition? Is it unreviewable? Is it one of those decisions by the secretary that is precluded from judicial review? In consular processing, it would be unreviewable. So that means that's the problem. Because if that decision is unreviewable, he will never be able to litigate that issue of a crime of moral turpitude. Because if the secretary says, contrary to your suggestion today, 10 years from now, the secretary says, that decision by the IJ, although unreviewed, is binding and preclusive. You've been committed of a crime involving moral turpitude. Therefore, your request to be admitted is denied. If that is an unreviewable discretionary decision, he has no other opportunity to challenge it. He would have the opportunity to challenge it before the agency. And that is the process that is set up here. And the agency also says preclusive effect. The agency does not say preclusive effect. How do we know that? They haven't addressed it. I did some work on this case, and I certainly do not know the maze of immigration law. It's a new world every time I enter it. But I didn't find anything that specifically addresses what effect you give to an unreviewed IJ finding. But I've said it before, and we've taken you way over your time, Ms. Mercia, and we really do appreciate your help. No, Your Honor. Thank you very much, Your Honor. Mr. Pack. Thank you, Your Honor. And to begin where we just left off, it would have preclusive effects under my understanding if a consular officer takes a look at Mr. McPherson's record, sees an IJ's finding of removability on the basis of committing a crime involving moral turpitude, and sees that it was affirmed on board. I think that would have preclusive effects. And it was. It already did have preclusive effects in this case. I would like to point your honors to administrative record pages 600 to 601, appendix 94 to 95. This was in front of the immigration judge right after the immigration judge sustained the crime involving moral turpitude. And as Mr. McPherson raises the possibility of an I-130 application, the judge asked whether Mr. McPherson would be eligible for a cancellation of removal. The judge asked, Mr. McKee, the respondent is not eligible for cancellation, correct? Mr. McKee, the government says, yes, judge, based on the holding that he has a CIMT. So not only would this have preclusive effects, it has already had preclusive effects in this case. Which body was that before, did you say? In front of the immigration judge, your honor. But that's before the appeal. Right. That's before the appeal in challenging the CIMT, your honor. This is. Right, but the lawyer can only speak about what's happening in front of him or her at the moment in real time. So at that point, based on the IJ's finding, which is obviously authoritative at the time, it does bar certain forms of relief. But that didn't speak for what the BIA was going to do in a later appeal. I agree with that, your honor. Of course, the possibility of an appeal to the BIA was already live at that time. I think it's clear that the IJ would rely on its own ruling. But what other grounds, were there any other issues that you haven't raised here that were potential grounds for removal? Yes, your honor. There were three charges of removability. One was for the visa issue, the failure to maintain non-immigrant status. Mr. McPherson conceded to that. So he is removable on that ground. He's challenging the other two, a crime involving moral turpitude and a crime of domestic violence. So removability. Those were the only three. There was not another one that he's not raising here. No, there were three charges of removability that the immigration judge sustained. Is the holding you're asking us to make that the BIA, in every instance, must either decide each grounds of removability or vacate any IJ determination upon which it does not rely for removability? No, it would be more narrow than that, your honor. What has to happen is that not only are there multiple grounds of removability, the petitioner challenges the more severe of those grounds, the one seeming to have these preclusive effects and preserves that challenge. And the board doesn't even explain why it was not reaching that issue. And again, I think you could also throw in the fact that here, reentry rights are real. This is the only means by which he can live with his family in the United States. Your honor, if I could address Judge Hall's relief question very briefly. I think you did, although you may answer her question, then I've got one more for you before you sit. Okay. What about this non-6E versus attorney general language? Here's another approach. Again, I'm just throwing out approaches to see the pros and cons of them. There we said we grant the petitioner part remand so he can apply his expertise to clarify whether his decision not to address the issue will have any material or practical or legal impact on his future ability to reenter the United States. So it might not be so good just say to vacate because that may, oh, you've got to vacate. Anything you don't review, that could start a bad precedent. So I'm just thinking out that in light of Judge Grant's thing. So here is the non-6G. There we said we remanded so the BIA can apply its expertise to clarify whether his decision not to address the issue will have any material, practical, or legal impact on his future ability to reenter. That's right, your honor. And I think that's the same first predicate question that the board must address on remand. And I think that's consistent with what this court said in Ocean Rindade. It has that same language about applying its expertise in immigration law to determine whether it would have any material, practical, or legal impact on the appellant's ability to reenter the United States. Because that is the first-line explanation. So if they said it does, and then I use the next argument, if it does, then they have to do the other two issues? I think that would be, your honor, and that was the result. All right. So the first thing they got to decide, does it have any legal effect? Since there's no law saying it's precedential, not precedential, whatever. We let them decide. And then, if it is practical effect, they then got to get in the merits. And that just seems like a lot of complicated litigation over something nobody needs to address right now. Well, your honor, it would not have been complicated if the board had provided this court with that explanation. I think part of the complexity comes from the fact that Let's say the board didn't want to reach these issues. What would you suggest the board should have said? Well, the board doesn't get to choose without explanation that it won't address the more severe consequences. You're saying they got to do it in every case, no matter what. No, your honor. It's narrower than that. So where there is a challenge to the more severe of those multiple grounds for removability, where on its face they have these preclusive effects, then if the board wants to take a pass on reviewing that, then at least it needs to explain why it won't have these preclusive effects because of waiver or cancellation or removal or so on and so forth. Hasn't the United States just told us that, in the United States' view, it will not have preclusive effects in the only available future proceeding? Well, to Judge Jordan's point, I think it would not be Miss Lisa Murchia in front of the consular office in Jamaica, and there is no reviewability for that decision. I think what the consular officer would see is that the immigration judge has sustained the finding, that the board has affirmed it, and that would be the end of the matter. But did the board affirm that finding, or did the board affirm the order of removability? The board? The order of removal. Yes, under the first ground. But the consular officer taking a look at it, I think it is possible, and I don't think the government could guarantee that it won't be the case, that the consular officer will treat that as binding. Well, but if it's not legally binding, I think there's a difference between the finding as legally binding and a consular officer may mistakenly believe that it's legally binding. Those two things lead to a different result. Maybe not for your client, but for our jurisdiction, even, potentially, to review that. Well, I think they are two different factual findings. But again, Your Honor, I think the first argument here is that immigration law is complicated, and it has questions about what the consular officer would do. Expertise in that immigration law and what the consular officer would do rests with the BIA. The board is the proper body that would be able to explain definitively whether or not this has preclusive effects, not some representation before the court today. And Mr. McPherson is entitled to that application of expertise in immigration law. Unless the court has any other questions, I would urge the court to remand to the Board of Immigration Appeals. Thank you very much. All right, Mr. Pak, thank you very much. Thank you both. We're going to take a five-minute break, and then we'll...